ACCEPTED
01-18-00419-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/24/2018 10:53 PM
CHRISTOPHER PRINE
CLERK

Cause No. _____01-18-00419-CR_____

From the 405th District Court of Galveston County, Texas

In re Kristie L. Walsdorf, Relator

In the ___ Court of Appeals

Houston, Texas

Petition for Writ of Mandamus

And

Brief in Support of the Petition

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/24/2018 10:53:13 PM
CHRISTOPHER A. PRINE
Clerk

## Identity of Parties and Counsel

Relator is Kristie L. Walsdorf, counsel for Susan Nicole Jacob, who is one of the two real parties in interests. Relator is represented by Mark W. Bennett of Bennett & Bennett, 917 Franklin Street, Fourth Floor, Houston, Texas 77002.

The other real party in interest is the State of Texas, represented by Galveston County District Attorney Jack Roady, 600 59th Street, Suite 1001, Galveston, Texas 77551.

Respondent is the Honorable Michelle Slaughter, Judge of the 405th District Court in Galveston County, Texas.

## Table of Contents

Identity of Parties and Counsel.................................1

Table of Contents ..............................................1

Index of Authorities ..........................................3

Statement of the Case ..........................................3

Statement of Jurisdiction......................................4

Issue Presented ...............................................4

Statement of Facts .............................................4

Argument......................................................4

Relief Sought.................................................................. 4

Brief in Support of the Petition............................... 4

Standard........................................................... 5

The Record ....................................................... 5

Clear Right to Relief........................................ 5

Prior restraints are disfavored. .......................... 6

The Davenport standard is the correct
threshold standard.............................................7

Public policy disfavors this prior restraint.............8

The State's rationale does not hold up...................8

No Adequate Remedy .......................................10

Conclusion ...................................................... 10

Prayer ............................................................... 11

Certification..................................................... 11

Certificate of Service .......................................... 12

Appendices ........................................................ 13

Appendix A: Certified or Sworn Copies................... 13

Appendix A1: Certified Copy of Protective Order .... 13

Appendix A2: Certified Copy of State's Motion
for Protective Order ........................................ 16

Appendix A3: Reporter's Record.......................... 19

Appendix B: [Intentionally Left Blank] ................... 36

Appendix C: Text of Law (Other than Case Law)
on Which Argument is Based................................ 37

Section 22.221(b) of the Texas Government
Code, Writ Power ............................................. 37

2

Selected Portions of Texas Disciplinary Rule of Professional Conduct 3.09, Special Duties of a Prosecutor, and Comments Thereto......................37

## Index of Authorities

### CASES

Alexander v. United States, 509 U.S. 544 (1993) ...............................6

Davenport v. Garcia, 834 S.W.2d 4 (Tex. 1992) (orig. proceeding) ... 6, 7

In re Benton, 238 S.W.3d 587 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (orig. proceeding)..................................................7

In re Graves, 217 S.W.3d 744 (Tex. App.—Waco 2007, no pet.) (orig. proceeding).........................................................................8

In re King, 293 S.W.3d. 376 (Tex. App.—Amarillo 2009, no pet.) (orig. proceeding).........................................................................7

Nebraska Press Ass'n v. Stuart, 427 U.S. 539 (1976) .........................6

San Antonio Express–News v. Roman, 861 S.W.2d 265 (Tex. App.—San Antonio 1993, orig. proceeding) .............................. 8, 10

### STATUTES

Tex. Govt. Code § 22.221(b)(1) ..................................................... 4

### OTHER AUTHORITIES

Tex. R. Discip. Proc. 3.09(d)...........................................................9

## Statement of the Case

The underlying proceeding is a criminal prosecution.

Respondent is the Honorable Michelle Slaughter, Judge of the 405th District Court in Galveston County, Texas.

Relator seeks relief from Respondent's having signed a *Protective Order* comprising a prior restraint on Relator's speech under article 1, section 8 of the Texas Constitution.

## Statement of Jurisdiction

Galveston County is a county in this Court's district. This Court has jurisdiction under section 22.221(b)(1) of the Texas Government Code. Tex. Govt. Code § 22.221(b)(1).

## Issue Presented

Is the *Protective Order* a void prior restraint?

## Statement of Facts

On June 26, 2017 Real Party in Interest the State of Texas filed a *Motion for Protective Order*. On October 2, 2017 Respondent entered the *Protective Order*, restricting Relator's speech.

## Argument

### Relief Sought

Relator files this *Petition for Writ of Mandamus* to ask this Court to grant the writ and order Respondent to vacate its *Protective Order*.

## Brief in Support of the Petition

## STANDARD

To demonstrate the right to mandamus relief, Relator must establish that Respondent clearly abused her discretion, and that Relator has no adequate remedy by appeal.

## THE RECORD

The record comprises:

- The State's *Motion for Protective Order*;
- The *Protective Order*; and
- The Reporter's Record from October 2, 2017.

The *Protective Order* provides:

[1] The Defendant and counsel shall be admonished that the purpose of discovery is case preparation and that sensitive information provided within the scope of the Protective Order is to be used only for that purpose;

[2] Information disclosed under the Protective Order shall be used only by the defendant, the attorney representing the defendant, or an investigator, expert, consulting legal counsel, or other agent of the attorney representing the defendant solely for purposes of this action;

[3] The Defendant and counsel for the defense shall not release or communicate the information to any other outside parties.

## CLEAR RIGHT TO RELIEF

This *Protective Order* is a prior restraint on Relator's speech.

A prior restraint on speech is an order "forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

Relator has a clear right to relief because the prior restraint violates article I, section 8 of the Texas Constitution, which "provides greater rights of free expression than its federal equivalent." *Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex. 1992) (orig. proceeding).

## Prior restraints are disfavored.

Prior restraints on speech are presumptively unconstitutional. *See id.* In the context of a prior restraint affecting attorneys and parties to a case:

> … federal courts consider three factors. First, the court must consider whether the requested order is narrowly tailored. Next, the court determines whether a gag order is the least restrictive means, or if less burdensome alternatives would achieve the same governmental objective. Finally, the court applies the "threshold standard for imposing a prior restraint.

*In re Benton*, 238 S.W.3d 587, 593 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (orig. proceeding) (internal quotation marks and citations omitted).

### The Davenport standard is the correct threshold standard.

In *Davenport*, the Texas Supreme Court concluded that a gag order in a civil proceeding will withstand state constitutional scrutiny only if there are specific findings supported by evidence that:

> (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and
> (2) the judicial action represents the least restrictive means to prevent that harm.

*Davenport v. Garcia*, 834 S.W.2d at 10.

The trial court made no such findings, and there is no evidence that the *Protective Order* is necessary to prevent an imminent and irreparable harm to the judicial process that will deprive litigants of a just resolution of their dispute.

While *Davenport* involved a civil case, the Amarillo, Waco and San Antonio Courts of Appeals have applied the *Davenport* test to prior restraints in criminal proceedings. *In re King*, 293 S.W.3d. 376 (Tex. App.—Amarillo 2009, no pet.) (orig. proceeding); *In re Graves*, 217 S.W.3d 744, 753 (Tex. App.—Waco 2007, no pet.) (orig.

7

proceeding); *San Antonio Express–News v. Roman*, 861 S.W.2d 265, 268 (Tex. App.—San Antonio 1993, orig. proceeding).[1]

## Public policy disfavors this prior restraint.

The State in its *Motion for Protective Order* describes the records subject to the Protective Order:

> The State is producing records regarding a law enforcement officer and/or state employee, in accordance with the State's duty to disclose Brady / Giglio / Morton evidence.

*Motion for Protective Order*. The due process clause of the United States Constitution requires a prosecutor to seek out and disclose to the defense *Brady* and *Giglio* evidence. This is an absolute rule, and disclosure may not be conditioned on a prior restraint barring the defense from discussing such evidence.

## The State's rationale does not hold up.

The State in its *Motion for Protective Order* relied solely on Rule 3.09(d) of the Texas Disciplinary Rules of Professional Conduct:

---

[1] The Fourteenth Court of Appeals in *In re Benton* discussed the various threshold standards, and declined to decide which applies to a prior restraint on counsel in a criminal cases because the prior restraint in that case failed the least stringent test. *In re Benton*, 238 S.W.3d 587, 597(Tex. App.—Houston [14th Dist.] 2007, no pet.). The *Davenport* test is the only one approved under the more-stringent Texas Constitution. Here, as in *Benton*, though, whichever standard applies, the prior restraint in this case fails to satisfy it.

Texas Rules of Professional Conduct § 3.09(d) requires that a prosecutor "make timely disclosure to the defense of all evidence or information …" exculpatory or mitigating  "… except when the prosecutor is relieved of this responsibility by a protective order of the tribunal." Comment 5 of Rule 3 explains the exception. "**The exception in paragraph (d) recognizes that a prosecutor may seek an appropriate protective order from the tribunal if disclosure of information to the defense could result in substantial harm to an individual or to the public interest.**" *Texas Rules of Professional Conduct §3.09, Comment 5*. The State requests that the Court enter a Protective Order in this case with the following provisions:

*Motion for Protective Order*.

Rule 3.09(d) is an ethical rule, not a rule of criminal procedure. It does not govern the trial court, but creates disciplinary liability for a prosecutor's failure to comply with his due-process obligations to disclose *Brady* and *Giglio* evidence. The exception in Rule 3.09(d) relieves a prosecutor of disciplinary liability under Rule 3.09(d) for failing to disclose *Brady* and *Giglio* evidence in limited circumstances. Tex. R. Discip. Proc. 3.09(d).

The "protective order" referenced in Rule 3.09(d) is not an order gagging another lawyer (such as Relator) but a protective order

relieving the prosecutor of his ethical duty to disclose *Brady* and *Giglio* information.[2]

Under the disciplinary rule the prosecutor is subject to discipline if he does not either a) disclose Brady; or b) get a protective order relieving him of that responsibility. "Disclose *Brady* and *Giglio* material subject to a prior restraint on the defense" is not an option created by Rule 3.09(d).

## No Adequate Remedy

Mandamus is the appropriate method by which to challenge a gag order. *San Antonio Express–News v. Roman*, 861 S.W.2d at 266. Because no appealable order has been entered, Relator has no adequate remedy by appeal. *See id.* at 267.

## Conclusion

Because the *Protective Order* is a prior restraint, it is presumptively unconstitutional. Because there are no specific findings supported by evidence either that an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, or

---

[2] Even if a prosecutor got a protective order relieving him of his Rule 3.09(d) responsibility, he would still have a Constitutional duty under *Brady* and its progeny, with which Rule 3.09(d) has nothing to do.

10

that the judicial action represents the least restrictive means to prevent that harm, the *Protective Order* does not meet the standard of *Davenport v. Garcia*, it is void. Relator clearly abused his discretion in entering this protective order.

## Prayer

For these reasons, Relator asks that the Court order the clerk to file this *Petition for Writ of Mandamus* and set it for hearing; order the clerk of the court to give notice to all parties of the filing of the petition and the hearing date; and, following the hearing, issue a *Writ of Mandamus* directed to Respondent to vacate the *Protective Order*, and grant any other relief to which Relator may be entitled.

## Certification

I have reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

_____
Mark W. Bennett

11

## Certificate of Service

A copy of this petition will be delivered to attorney for the State by the efiling system.

_____
Mark W. Bennett

## APPENDICES

### Appendix A: Certified or Sworn Copies

*Appendix A1: Certified Copy of Protective Order*

CAUSE NO. 15CR0860

STATE OF TEXAS                                        §         IN THE         405th

VS.                                                   §         DISTRICT OR COUNTY COURT OF

Susan Jacob                                           §         GALVESTON COUNTY, TEXAS

## PROTECTIVE ORDER

On this day came to be heard State's Motion for Protective Order regarding Brent Cooley of the Galveston County Sheriff's Office. The State's Motion for Protective Order is:

☑ GRANTED

The Court therefore finds and ORDERS:

[1] The Defendant and counsel shall be admonished that the purpose of discovery is case preparation and that sensitive information provided within the scope of the Protective Order is to be used only for that purpose.

[2] Information disclosed under the Protective Order shall be used only by the defendant, the attorney representing the defendant, or an investigator, expert, consulting legal counsel, or other agent of the attorney representing the defendant solely for purposes of this action.

[3] The Defendant and counsel for the defense shall not release or communicate the information to any other outside parties.

☐ DENIED

SIGNED THIS THE 2nd Day of October , 20 17 .

_____
PRESIDING JUDGE
District Court No. 405th
County Court No. _____





15-CR-0860
OCPROCR
Protective Order
1492090

Rev. 21NOV2016



I, John D. Kinard, District Clerk and Custodian of Records for District Courts of Galveston, County, Texas do hereby certify that the foregoing is a true and correct copy of the original record now in my lawful custody and filed in this office on the _____2nd_____ day of ____October____ _____2017_____ witness my official hand and seal of office this _____22nd_____ day of _____May_____ _____2018_____

JOHN D. KINARD, DISTRICT CLERK
Galveston County, Texas

By_____ Deputy

*APPENDIX A2: CERTIFIED COPY OF STATE'S MOTION FOR PROTECTIVE ORDER*

CAUSE NO. 15CR0860

| STATE OF TEXAS | § | IN THE 405th PM 4:16 |
| | § | |
| VS. | § | DISTRICT OR COUNTY COURT OF |
| Susan Jacob | § | |
| | § | GALVESTON COUNTY, TEXAS |

2017 JUN 26 PM 4:16

## STATE'S MOTION FOR PROTECTIVE ORDER

Now comes the State of Texas, through her Criminal District Attorney of Galveston County, in the above entitled and numbered cause, and respectfully asks this Honorable Court to grant a Protective Order on discovery regarding allegations of misconduct of a law enforcement officer and/or state employee.

The State is producing records regarding a law enforcement officer and/or state employee, in accordance with the State's duty to disclose *Brady / Giglio / Morton* evidence.

**The State requests and moves that the Court enter a Protective Order limiting the use and circulation of the information provided.** Texas Rules of Professional Conduct § 3.09(d) requires that a prosecutor "make timely disclosure to the defense of all evidence or information…" exculpatory or mitigating "…except when the prosecutor is relieved of this responsibility by a protective order of the tribunal." Comment 5 of Rule 3 explains the exception. **"The exception in paragraph (d) recognizes that a prosecutor may seek an appropriate protective order from the tribunal if disclosure of information to the defense could result in substantial harm to an individual or to the public interest."** *Texas Rules of Professional Conduct §3.09, Comment 5.* The State requests that the Court enter a Protective Order in this case with the following provisions:

[1] The Defendant and counsel shall be admonished that the purpose of discovery is case preparation and that sensitive information provided within the scope of the Protective Order is to be used only for that purpose.

[2] Information disclosed under the Protective Order shall be used only by the defendant, the attorney representing the defendant, or an investigator, expert, consulting legal counsel, or other agent of the attorney representing the defendant solely for purposes of this action.

[3] The Defendant and counsel for the defense shall not release or communicate the information to any other outside parties.

WHEREFORE, PREMISES CONSIDERED, the State of Texas respectfully moves this Honorable Court to grant this Protective Order and grant such further relief to which the State may show herself entitled.

Respectfully Submitted,

_____
Assistant District Attorney

## CERTIFICATE OF DELIVERY

On 6-23-17 _____, the undersigned certifies a true and correct copy of the foregoing Motion for Protective Order was delivered to Kristi Walsdorf _____, via email, facsimile, or hand delivery.

Respectfully Submitted,

_____
Assistant District Attorney

15-CR-0860
DCSMPO
State's Motion for Protective Order
1441670

Rev. 21NOV2016

I, John D. Kinard, District Clerk and Custodian of Records for District Courts of Galveston, County, Texas do hereby certify that the foregoing is a true and correct copy of the original record, now in my lawful custody and filed in this office on the _____ day of _____ _____ witness my official hand and seal of office this _____ day of _____ _____

JOHN D. KINARD, DISTRICT CLERK
Galveston County, Texas
By _____ Deputy



*Appendix A3: Reporter's Record*

*REPORTER'S RECORD*
*VOLUME 1 OF 1 VOLUME*
*TRIAL COURT CAUSE NO. 14-CR-1986 and 15-CR-0860*

*THE STATE OF TEXAS            ) IN THE DISTRICT COURT*
*                             )*
*vs.                           ) GALVESTON COUNTY, TEXAS*
*                             )*
*SUSAN NICOLE JACOB            )  405th JUDICIAL DISTRICT*

*DEFENDANT'S OBJECTIONS TO STATE'S MOTION FOR*
*PROTECTIVE ORDER AND MOTION FOR DISCLOSURE OF*
*WITHHELD INFORMATION AND/OR SANCTIONS*

*On the 2nd day of October, 2017, the following proceedings came on to be held in the above-entitled and numbered cause before the Honorable Michelle Slaughter, Judge Presiding, held in Galveston County, Texas.*

*Proceedings reported by computerized stenotype machine.*

*APPEARANCES*

*ADAM POOLE*
*SBOT NO. 24042968*
*Chief Assistant Criminal District Attorney*
*Galveston County District Attorney's Office*
*600 59th Street, Suite 1001*
*Galveston, Texas 77551*
*Telephone:  409.766.2344*
*Fax:  409.766.2290*
*E-mail:  adam.poole@co.galveston.tx.us*
*Attorney for Prosecution, The State of Texas*

*KRISTIE WALSDORF*
*SBOT NO. 24076145*
*Walsdorf Law Firm*
*305 21st Street, Suite #247*
*Galveston, Texas 77550*
*Telephone:  409.766.7330*
*Fax:  409.750.7131*
*E-mail:  kwalsdorf@walsdorflaw.com*
*Attorney for Defendant, Susan Nicole Jacob*

**CHRONOLOGICAL INDEX**

*DEFENDANT'S OBJECTIONS TO STATE'S MOTION FOR PROTECTIVE ORDER AND MOTION FOR DISCLOSURE OF WITHHELD INFORMATION AND/OR SANCTIONS*

October 2, 2017

                                              Page    Vol.

Adjournment ...................................16     1

Reporter's Certificate .........................17    1

KAREN S. BERNHARDT, C.S.R.
(713) 962-2530

THE COURT: Let's go on the record in 14-CR-1986, 15-CR-0860, State of Texas vs. Susan Nicole Jacob.

Let's have appearance of counsel for the record?

MR. POOLE: Adam Poole for the State.

MS. WALSDORF: Kristie Walsdorf for the defense.

THE COURT: Is this Susan Jacob?

MS. WALSDORF: Yes, ma'am.

THE COURT: Okay. All right. We are here on the, in each case, on the State's Motion to Adjudicate Guilt and Revoke Community Supervision.

Ms. Jacob, could you please stand up for a moment?

MS. WALSDORF: Your Honor, if I may clarify?

THE COURT: Sure.

MS. WALSDORF: We're only here on the protective order issue.

THE COURT: Only on protective order? I thought this was an MRP.

MS. WALSDORF: No, no.

MR. POOLE: They were Motion to Revoke but --

MS. WALSDORF: We're just here today for the protective order.

THE COURT: So we're here then on these cases regarding some Brady issues? So do you want to proceed, Ms. Walsdorf?

MS. WALSDORF: Yes, Your Honor. I went ahead -- we were here while Judge Garner was on the bench for you. At that time the State said they had some Brady information. I had filed for a Brady -- or I filed for discovery -- I filed for discovery in June, on June 12th. And in court the State orally said they had some Brady information regarding an Officer Coolly. They did not file for a protective order. I was simply told orally they had a protective order, and they did give me a copy of it. Then they gave me a copy of the actual order.

We had a little chitchat in the back with Judge Garner. Judge Garner said, Wait until Judge Slaughter is here. So my motion stands. I went ahead and laid out all the arguments. My biggest issues is this hasn't even been filed by the State. So really I'm kind of just going blind. What I know is in the other hearings that I've had in these cases, I have called the First Assistant, Kevin Petroff, to the stand who says, as a general policy,

their office will not disclose Brady information until the case is set for final resolution, which in some cases can take months. But his testimony is that they wanted a blanket protective order, although he understood that the Michael Morton says they shall disclose, there's indeed a rule for the prosecutors to follow the discovery rules, they shall disclose, that they wanted the Courts first to order defense attorneys to comply with that protective order, even when the State was not presenting what they have to present under the comments. They are allowed to get protective orders when they can show there is substantial harm to an individual or to the public.

In this case the State has not put forth anything in the motion stating there is any sort of a public harm or any harm to an individual, let alone it being substantial harm.

And I went ahead and put in the motion the official transcript where Mr. Petroff testified that it was not -- it was their policy to induce the local police agency to give them Brady information in hopes they would continue to do so. If the State were to step out and ask for these protective orders every time something came up only with the police officer's personnel file.

I can only assume that is what this is. Again, I haven't been given any information about what this Brady information is. I'm assuming it must be a personnel file because, according to the first assistant, that's what they asked for. To my knowledge they haven't asked for protective orders in any other cases regarding any other individuals. And I know that the -- in addition to the fact I don't have any of this information, the State's kind of taking on a dual role in that they're creating a conflict of interest.

The police departments themselves, they have their own attorneys. And in this case nobody has excepted, nobody has objected. We don't know they even have an issue with this. State has taken it upon themselves to say, on one hand we're going to prosecute police officers when they do something wrong. On the other hand we're going to jump in and protect their personnel files.

So without even having the police agency's attorneys come in, the State's kind of taking on a dual role, creating a conflict of interest. I think the threshold issue is; one, the State hasn't filed anything in the motion. They haven't done what they're supposed to do and stated

any sort of substantial harm, let alone any harm. Again, we're just kind of flying blind that the DA's Office policy is to bind defense attorneys with the carrot being -- I say this because it was on the report and I want to point that out in the transcript that I provided that was certified, that the DA's office wants the ability to penalize defense attorneys for putting any of this information out in the public, even though Michael Morton does not -- even Michael Morton says you have to disclose this, there are no specific provisions in there stating defense attorneys can't use this information for the betterment of their client and their case.

At one point Mr. Petroff testified that was a fear that some of these personnel files might be put on Facebook. As you know, defense attorneys are bound by our ethical duties. We're not allowed to put anything on Facebook. Nobody has ever accused me have putting something on Facebook. That is not what I would do with the information. I would use that as I'm allowed to do to work the case.

At the very least, I've got the -- should have the ability to see what it is and discuss it with my client. I pretty much have been prevented from working on her case because we haven't been

provided this information.

Again, there are very specific means for the State to get these protective orders. Most of the case protective orders have to do with children or child witnesses. In this case they're specifically asking them for police officers.

Now, police officers are doing something that needs to be protected, well, then the State needs to show where I'm going to do something to harm them substantially. They simply haven't done that.

Michael Morton -- what Michael Morton did in ethical rules, what they've done is they have removed the gatekeeping process. It is no longer up to the DAs to say what they shall give to the defense attorneys. It's no longer, with all due respect, Your Honor, there is no longer gatekeeping function for the judiciary that's been taken out.

The rule is you just have to hand this information over. And the few times I've actually had to litigate these, judges have agreed with me so far the cases where I've been given the information, I will state on the record, I've never put any of this information on the Facebook. I have not shared it with the public. I have not brought it to the

media. I have done no such thing with it. And I don't think I've even been accused of doing that, but at this point they haven't even said what harm, let alone anything substantial, would come from them. Just provide me the information I've asked for and they're obligated to give me.

THE COURT: Response?

MR. POOLE: Judge, I will agree on one thing, and that is I think initially this came to the Court a little differently than most because when it was first presented it was Judge Garner on the bench. He basically said, I don't want to sign this document. I just want to let Judge Slaughter hear it later. Laimplet that's why the motion hasn't been filed.

Typical procedure is come -- we come up with the records and the motion for protective order. It all gets done, then and there. We have set for a hearing. I know you're well aware what the protective order motion states, and they do state the purpose behind them is to prevent substantial harm, if these documents, which are confidential, marked privileged and definitely sensitive material, if they were released to the public in anyway.

So I very strongly disagree with what

Ms. Walsdorf has said repeatedly here and repeatedly in her motion where she says that we've indicated to her we have Brady. Brady and this material was Brady. She hasn't seen it so she has no idea if it's Brady. I couldn't disagree more that it's Brady. You look at the officer in question Officer Cooley, he had no responsibility in one case. He was present at the arrest of the other. He had no interaction with the defendant whatsoever, nothing to do with the drugs -- I can't think of how any of these records could relate to being impeachable or anything like that.

And we're a step removed from that because this is an MRP. So the underlying case has already been disposed of. Also the records regarding Officer Cooley, we're being overly inclusive with what we're turning over. Their allegations not only have not been substantiated but actually disproven. Yet we're still turning it over. That's our policy.

We're overly inclusive even if it's not Brady, we still turn it over. We simply request a protective order. The language of the protective order comes directly out of 39.14 in terms of what it prevents them from doing. They can only uses it for criminal purposes for that case. It's just that

39.14 doesn't describe any result or remedy if they were violated. That's what the protective order is for. The Court could amend it and write it in a different penalty or no penalty at all. It's entirely up to the Court. We're going to give the records over regardless of whether a protective order is signed and regardless of what it says. But we're going to keep continuing to ask for that protective order because if they were to subpoena these records themselves, then you would have the attorneys for these individual agencies eation coming in and they would be requesting a protective order. We're getting to this same places either way. This is simply a biproduct of our process of being overly inclusive, turning the records over regardless of requesting a protective order.

THE COURT: Can you tell me what's in those records that would substantially harm the individual or be against public interest or a problem in any way, shape or form?

MR. POOLE: Yes, Your Honor. So in regards to this particular officer, it's a little bit complicated because one of the investigations sort of shoehorned in a lot of ciliary documents such as the officer's divorce decree. I mean, it's pages and

pages of records that are not related to anything.

It's like various employee information, internal memos. There is also a lot of proprietary information in here. In addition to that, even under the additional section we always turn over anyway, there are, for example, complaints that were not substantiated about a dating relationship he had that turned out not be in any violation of any kind of policy. It's just personal information. Like I said, we still want to turn it over. We intend to turn it over regardless. We're just asking there be a protective order in place.

THE COURT: Ms. Walsdorf?

MS. WALSDORF: Well, Your Honor, I don't think it matters whether it's Brady -- I'm sorry. I don't think it matters whether it's Brady information or not. If it's discoverable material, it does need to be turned over. Again, when I said I was flying blind, it was simply an oral conversation we had in chambers with the Judge Garner back in August.

So I'm going off of memory because there was nothing filed. Okay? In that respect I do think we still get the information. And it has been litigated before. This was an open records request.

We went through the same problems with Judge Neves. In fact that's when the city did make an appearance and said themselves Michael Morton actually changed local rules in there was no more in camera review. It had to be disclosed.

So either route we still get this information, but it has been already addressed by Judge Neves when he said, Yeah. I understand. Because I was able to say I've been asking for them under open records at the same time, which is why we had the prosecutor's office and city attorney's office in here testifying about the same issue.

In the end, Your Honor, even though these might be sensitive documents, yeah, they're personnel files. They're sensitive, but that does rise to what is needed in order to show substantial harm or harm to the public interest. Just because they might be sensitive does not show I'm going to do something with that information that is going to create harm. Just because I might know something as an attorney doesn't mean that individual, that officer, is going to be harmed by my basic knowledge of that information.

THE COURT: All right. Here's what I'm going to do, just given particular facts as I

understand them on this case, I'm going to go ahead and grant the protective order. But, Ms. Walsdorf, of course, you're going to receive this information. If you find something in this information that you believe is Brady or impeachment evidence or some sort of evidence that you believe that you actually need for your client's case, let me know. And then we can have a hearing on that and if I -- I can decide to lift that protective order for that purpose. So -- but, of course, protective order is limited and still allows you to utilize the information, receive the information.

That's how we'll proceed in this case. Okay?

Thank you.

Do you have an order?

MR. POOLE: Yes, Judge.

STATE OF TEXAS

COUNTY OF Galveston

I, Karen S. Bernhardt, Deputy Court Reporter in and for the 405th District Court of Galveston, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence.

I further certify that the total cost for the preparation of this Reporter's Record is $56.00 and will be paid by Galveston County voucher.

WITNESS MY OFFICIAL HAND this the 25th day of October, 2017.

*/s/Karen S. Bernhardt*
Karen S. Bernhardt, CSR 1601
Expiration Date: 12/31/18
Deputy Court Reporter, 405th District Court
Galveston County, Texas
3901 29th Street No.
Texas City, Texas 77590/ Telephone: 713.962.2530

KAREN S. BERNHARDT, C.S.R.
(713) 962-2530

## Appendix B: [Intentionally Left Blank]

### Appendix C: Text of Law (Other than Case Law) on Which Argument is Based

*Section 22.221(b) of the Texas Government Code, Writ Power*

(b) Each court of appeals for a court of appeals district may issue all writs of mandamus, agreeable to the principles of law regulating those writs, against :

(1) a judge of a district, statutory county, statutory probate county, or county court in the court of appeals district;

....

*Selected Portions of Texas Disciplinary Rule of Professional Conduct 3.09, Special Duties of a Prosecutor, and Comments Thereto*

The prosecutor in a criminal case shall:

...

(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal; ....

**Comment:**

*Source and Scope of Obligations*

1. A prosecutor has the responsibility to see that justice is done, and not simply to be an advocate. This responsibility carries with it a number of specific obligations. [A] prosecutor is obliged to see that the defendant is accorded procedural justice, that the defendant′s guilt is decided upon the basis of sufficient evidence, and that any sentence imposed is based on all unprivileged information known to the prosecutor. See paragraph (d). …. Applicable law may require other measures by the prosecutor and knowing disregard of those obligations or a systematic abuse of prosecutorial discretion could constitute a violation of Rule 8.04.

….

5. The exception in paragraph (d) recognizes that a prosecutor may seek an appropriate protective order from the tribunal if disclosure of information to the defense could result in substantial harm to an individual or to the public interest.